IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CHARLES P.,** | |
| **Plaintiff,** | |
| v. | Case No. 19 C 1525 |
| **ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,** | Magistrate Judge Beth W. Jantz |
| **Defendant.** | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charles P.[1] seeks review under 42 U.S.C. § 405(g) of the Commissioner's decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. For the reasons below, the Court reverses the Commissioner's decision.

## BACKGROUND

In January and September 2016, Plaintiff applied for DIB and SSI, respectively, and alleged a disability onset date of December 21, 2015.[2] (R. at 24, 196–97.) Plaintiff's application was denied initially and on reconsideration. (*Id.* at 119, 132.) In September 2017, an Administrative Law Judge ("ALJ") held a hearing, at which Plaintiff proceeded pro se and a vocational expert ("VE"), Caroline Kniaz, also testified. (*See id.* at 42–82.)

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name.
[2] Plaintiff had previously applied for benefits in January 2013, and that application was denied in October 2015 after a hearing. (R. at 109.)

On February 27, 2018, the ALJ issued a decision finding Plaintiff not disabled and denied his request for benefits. (R. at 24–36.) Applying the sequential evaluation process outlined in 20 C.F.R. § 404.1520, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 21, 2015 (step 1); his degenerative disc disease of his lumbar spine and osteoarthritis in his left knee were severe impairments (step 2); those severe impairments did not meet or equal a listing for a presumptive disability (step 3); and given his residual functional capacity ("RFC"), he could perform his past work as a "Warehouse Worker and Molded Rubber Good Cutter" as he had performed it (step 4). (*Id.* at 27–36.)

In evaluating Plaintiff's RFC at step 4, the ALJ determined that Plaintiff could perform light work except that he should avoid concentrated exposure to vibration and could never climb ladders, ropes, or scaffolds; never work at unprotected heights or around hazardous machinery; only work on a flat, even surface; and only occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl. (R. at 30.)

The Appeals Council declined review, making the ALJ's determination the final decision of the Commissioner. (R. at 3.)

## DISCUSSION

The Court will uphold the ALJ's decision only if it is supported by "substantial evidence"—that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted) (quoting *Consolidated Edison Co. v.*

2

*NLRB*, 305 U.S. 197, 229 (1938)). While this review is deferential, it is not "a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The ALJ must build "an accurate and logical bridge" between the evidence and her conclusion. *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (internal quotation marks omitted) (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)).

Plaintiff raises three arguments challenging the ALJ's decision. (*See* Dkt. 17 at 6–15.) After reviewing the record and the briefs, the Court is persuaded by Plaintiff's argument that the ALJ's determination at step 4 that he could perform his past work as a warehouse worker or molded rubber goods cutter is erroneous. (*Id.* at 11–15.) Additionally, the Court addresses the ALJ's analysis of Plaintiff's subjective complaints, as it is flawed.

At step 4, Plaintiff has the burden to establish that he cannot perform his "past relevant work," defined as work done in the past 15 years, that was substantial gainful activity ("SGA"), and that lasted long enough for Plaintiff to learn how to do it. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b).

First, Plaintiff contends that the ALJ erred by failing to consider whether his past work as a warehouse worker was "sheltered" or "subsidized," neither of which would qualify as SGA. SSR 83-33, 1983 WL 31255, at *3–4, 7; *see* 20 C.F.R. § 404.1573(c). (Dkt. 17 at 14–15.) In support of his contention that his work was not SGA, Plaintiff points to his testimony that he worked under several "special conditions": his supervisors were friends who gave him extra breaks or let him go

3

home early if he was in pain, modified his job at times, and allowed him to sit down. 20 C.F.R. § 404.1573(c). (*See* R. at 94–98.) Because this argument is plausible, and the Commissioner does not defend the ALJ's failure to consider this evidence, (*see* dkt. 21 at 8–9), the Court concludes that the ALJ erred in not exploring whether the Plaintiff's warehouse-worker position was sheltered or subsidized work and therefore not SGA.

Next, Plaintiff contends that the ALJ ignored that the job description in the Dictionary of Occupational Titles ("DOT") for molded rubber goods cutter—his other past relevant work—conflicted with his description of his work and the VE's testimony. (Dkt. 17 at 12–13.) An ALJ has an "affirmative responsibility" to ask whether a VE's evidence "conflicts with information provided in the DOT" before relying on that evidence. SSR 00-4P, 2000 WL 1898704, at *4. If the VE's testimony "appears to conflict with the DOT," the ALJ then "must obtain a reasonable explanation for the apparent conflict." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (internal quotation marks omitted) (quoting SSR 00-4P, 2000 WL 1898704, at *4). And a plaintiff's failure to raise an error of this kind at the administrative level does not forfeit his right to later argue that an error occurred. *Overman*, 546 F.3d at 463.

As an initial matter, the ALJ failed to even ask the VE whether her testimony was consistent with the DOT. That was error. *See Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) (explaining that an ALJ must affirmatively ask whether the VE's testimony is consistent with the DOT).

4

Moreover, a conflict was apparent between the two because Plaintiff's description of his work was significantly different from the DOT's description. Plaintiff testified that he "install[ed] water cabinets," which included putting "gasket moldings" on doors, measuring and cutting the sealant needed, and applying the sealant to the doors. (R. at 58–59, 61.) The VE summarized this job as "applying the rubber around the doors," and identified it as "molded rubber goods cutter," with a DOT number of "690.685-290." (*Id.* at 76.) She concluded that it ordinarily was performed at the medium level, but Plaintiff performed it at the light level. (*Id.*) The DOT position described the duties as follows:

> Tends machines that cut and trim cured rubber articles, such as ear plugs, water goggles, and automotive parts, from molded rubber sheets: Selects cutting die and fastens to bed of cutting machine with clamps or bolts. Positions molded rubber sheet over die, feeling with fingers to determine that each article in sheet is evenly aligned with cutting edges of die. Places fiberboard over rubber sheet to prevent damage to die cutting edges from ram. Pushes buttons to lower ram and cut out parts.

DOT, Molded Rubber Goods Cutter, 690.685-290. The DOT position appears to have little in common with Plaintiff's described job duties; both involve cutting and possibly rubber, but that is where the similarities end. Because of this clear disconnect, the ALJ needed to further question the VE to determine if there was a reasonable explanation that would reconcile the two.

The Commissioner responds that the ALJ was entitled to rely on the VE's opinion because the VE "accurately described [P]laintiff's past work" and testified that an individual with Plaintiff's RFC could perform the "Molded Rubber Goods Cutter" occupation as performed. (Dkt. 21 at 9.) The

5

Commissioner relies on *Jens v. Barnhart*, 347 F.3d 209 (7th Cir. 2003) for support, (dkt. 21 at 9), but that case is distinguishable. There, the plaintiff challenged the VE's testimony that his past work was sedentary work because it was listed as light work in the DOT. *Id.* at 213. The Seventh Circuit concluded that the ALJ was entitled to rely on the VE's testimony even if it conflicted with the DOT because the VE's testimony "reflected the nature of [his] work as it was actually performed by him." *Id.* In this case, the VE's adjustment of Plaintiff's exertion level from "medium" to "light" as actually performed did not resolve the critical conflict between Plaintiff's described job duties and the DOT's listed job duties, and so the ALJ could not simply rely on the VE's opinion.

Instead, the instant case is more analogous to *Purvis v. Berryhill*, No. 15-cv-11580, 2017 WL 1022014, at *10–11 (N.D. Ill. Mar. 16, 2017), in which the VE testified that the plaintiff performed a mail-handling job at the heavy exertion level while the DOT described a light-exertion job. The Court concluded that there was an apparent conflict between the duties of the two and that the ALJ was required to investigate further. *Id.* at 11. Additionally, the Court determined that the ALJ's affirmative duty to investigate had "even more salience because of Plaintiff's *pro se* status and the ALJ's attendant enhanced obligations to develop a full record." *Id.* Thus, the Court remanded "for further factual development into whether the DOT fits Plaintiff's past work." *Id.*

Remand is likewise warranted here in order for the ALJ to reevaluate whether Plaintiff can perform any of his past relevant work. The ALJ must

6

explore whether Plaintiff's work as a warehouse worker qualifies as SGA and whether the VE's testimony that Plaintiff's past work as a molded rubber goods cutter comports with the DOT.

On remand, the ALJ should also revisit her decision to discount Plaintiff's subjective complaints about his symptoms. The Court will overturn the ALJ's subjective symptom evaluation if it is "'patently wrong,' meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). The ALJ must give specific reasons for and adequately explain her findings. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). Although the Court is not remanding on this issue alone, the ALJ's reasoning is flawed.

First, the ALJ faulted Plaintiff for his sporadic treatment and lack of emergency-room visits. (R at 34.) But an ALJ cannot not draw negative inferences from a lack of regular treatment unless she has first considered a plaintiff's "explanations as to the lack of medical care." *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (internal quotation marks omitted) (quoting *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); *see also Murphy*, 759 F.3d at 816. Thus, the ALJ erred here by not exploring whether Plaintiff had "good reasons" for his limited treatment. *Murphy*, 759 F.3d at 816.

Second, the ALJ erred in relying on Plaintiff's "good" daily activities without explaining how they undermined Plaintiff's allegations. (R. at 34.) The ALJ noted that the activities included managing his personal care as well as "cleaning,

7

mopping, preparing simple meals, driving and shopping." (*Id.*) As Plaintiff points out, however, the ALJ did not mention Plaintiff's limitations in performing these activities. (*See* Dkt. 17 at 10; R at 235–38.) Nor did the ALJ explain how these activities contradict Plaintiff's reported symptoms other than that they "provide[d] some insight as to [his] ability to sustain some type of activity or movement." (R. at 34.) The ALJ erroneously failed to explain the perceived disconnect between Plaintiff's daily activities and his subjective reports concerning his pain. *See Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011).

Setting aside these two unsupported grounds, the ALJ's evaluation of Plaintiff's allegations rests solely on the fact that Plaintiff's subjective complaints did not align with the objective evidence. But that is impermissible: the ALJ cannot discount Plaintiff's reports of pain just because the objective evidence does not seem to corroborate them. *See Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Accordingly, the ALJ should reevaluate Plaintiff's subjective reports on remand.

## CONCLUSION

The Court grants Plaintiff's motion for summary judgment [16], denies the Commissioner's motion for summary judgment [20], reverses the Commissioner's

decision, and remands the case for further proceedings consistent with this Memorandum Opinion and Order pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**E N T E R:**

**Dated:** May 12, 2020

**BETH W. JANTZ**
**United States Magistrate Judge**